# **E x h i b i t  A**

STATE OF RHODE ISLAND                    SUPERIOR COURT
KENT, SC

DAVID GRIMALDI

   VS

US BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR LSF9 MASTER
PARTICIPATION TRUST, ALIAS,
CALIBER HOME LOANS, INC.,

## COMPLAINT

Plaintiff complaints of Defendants as follows:

1.      Plaintiff is a resident of the State of Rhode Island with an
address of 19 South Glen Drive, Coventry, Rhode Island.  Plaintiff owns
said real estate located at  19 South Glen River Drive, Coventry, Rhode
Island.

2.      Mortgage Electronic Registration Systems, Inc., ("MERS"), is a
Delaware Corporation.

3.      Plaintiff  executed a mortgage to MERS as Nominee for
Shamrock Financial Corporation, on February 27, 2009.  A copy is attached
as Exhibit A.

4.      On about February 16, 2013, a purported assignment of
mortgage and note from MERS to JP Morgan Chase Bank, NA ("Chase")
was allegedly executed. A copy is attached as Exhibit B.

5.      On or about July 24, 2014, Chase executed a purported
assignment of mortgage to the Secretary of Housing and Urban
Development.  A copy is attached as Exhibit C.

6.      On about January 9, 2015, a purported assignment of mortgage
and note  from the Secretary of Housing and Urban Development by Caliber
Home Loans, Inc., claiming to be an Attorney in fact to US Bank National

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 7:16 PM
Envelope: 737872
Reviewer: Lindsay Zuercher

Association as Trustee for LSF9 Master Participation Trust ("LSF9") was allegedly executed. A copy is attached as Exhibit D.

7.     The alleged assignment was void, because prior to January 9, 2015 the Plaintiff's mortgage loan had been sold with a pool of loans by the Department of Housing and Urban Development in December 2014 to Lone Star Funding.

8.     Harmon Law Office, PC, has scheduled a foreclosure sale for Plaintiff's home on August 31, 2016 at 2:00 PM, supposedly on behalf of LSF9 as indicated by Exhibit E.

9.     None of the provisions of the mortgage were complied with by Defendants. Before an alleged acceleration of the loan was declared; the Lender, or its assignee, was required to comply with the Mortgage. Paragraph 9 of the Mortgage does not authorize acceleration of foreclosure if not permitted by the Secretary of the Secretary of Housing and Urban Development. These regulations provide that the mortgagee must have a face to face meeting with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. No such face to face meeting occurred nor was attempted nor scheduled and thus this regulation was not complied with by any mortgagee before an alleged acceleration of the loan was declared. Thus this alleged attempted foreclosure is invalid as acceleration was not in compliance with 24 CFR 203.604. This section provides:

203.604
Contact with the mortgagor.
(a) [Reserved]
(b) **The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.**
( **emphasis added**) If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, or at least 30 days before assignment is requested

if the mortgage is insured on Hawaiian home land pursuant to section 247 or Indian land pursuant to section 248 or if assignment is requested under § 203.350(d) for mortgages authorized by section 203(q) of the National Housing Act.

(c) A face-to-face meeting is not required if:

(1) The mortgagor does not reside in the mortgaged property,

(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

(5) A reasonable effort to arrange a meeting is unsuccessful.

(d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than,200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

(e) (1) For mortgages insured pursuant to section 248 of the National Housing Act, the provisions of paragraphs (b), (c) and (d) of this section are applicable, except that a face-to-face meeting with the mortgagor is required, and a reasonable effort to arrange such a meeting shall include at least one trip to see the mortgagor at the mortgaged property, notwithstanding that such property is more than 200 miles from the mortgagee, its servicer, or a branch office of either. In addition, the mortgagee must document that it has made at least one telephone call to the mortgagor for the purpose of trying to arrange a face-to-face interview. The mortgagee may appoint an agent to perform its responsibilities under this paragraph.

(2) The mortgagee must also:

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 7:37:01 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 5 of 36 PageID #: 49

(i) Inform the mortgagor that HUD will make information regarding the status and payment history of the mortgagor's loan available to local credit bureaus and prospective creditors;
(ii) Inform the mortgagor of other available assistance, if any;
(iii) Inform the mortgagor of the names and addresses of HUD officials to whom further communications may be addressed.

10.     Paragraph 9 of the mortgage contains such conditions for the exercise of the statutory power of sale.

11.     Specifically the provisions in paragraph 9 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.

## COUNT I

**BREACH OF CONTRACT AND FAILURE TO COMPLY WITH CONDITIONS PRECEDENT TO EXERCISE THE STATUTORY POWER OF SALE BY NOT COMPLYING REGULATIONS OF THE SECERTARY OF HOUSING AND URBAN DEVELOPMENT INCORPORATED IN THE MORTGAGE**

12.     Paragraphs 1-11 are incorporated by reference.

13.     Plaintiff's mortgage incorporated the HUD regulations, which required a face to face meeting.

14.     There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

15.     Plaintiff was not provided the opportunity to have a face to face meeting with Chase.

16.     No fact to face meeting was scheduled for Plaintiff by Chase or any loan servicer or any owner of this mortgage note.

17.     No default letter was sent to Plaintiff after a face to face meeting with Chase had occurred or which had been scheduled by Chase and had been rejected by Plaintiff.

18.     Plaintiff never had a face to face meeting with a representative of Chase or any other entity.

19.     Neither LSF9 nor Caliber has sent Plaintiff a default notice or acceleration notice after he had been provided a face to face meeting. As a result, no acceleration letter could be sent to Plaintiff, nor could the mortgagee exercise the statutory power of sale.

20.     Pursuant to the terms of the mortgage, a face to face meeting with the mortgagee or the loan servicer pursuant to the provisions of paragraph 9 of the mortgage was a condition precedent to acceleration and the exercise of the statutory power of sale.

20.     Plaintiff thus never received an acceleration notice pursuant to the terms of the mortgage.

21.     Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's mortgage. This action constituted a breach of contract, resulting in damages to the Plaintiff.

22.     As a result of the improper and invalid attempt to exercise of the statutory power  of sale and purported  foreclosure sale due to the failure to comply with the terms of paragraph 9 of the mortgage, Plaintiff's mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in monthly statements from Caliber.

23.     Plaintiff has incurred costs to  hire an attorneys, in regard to the improper action of Caliber and LSF9, in sending a Notice of Foreclosure sale and seeking to conduct a sale without having sent a valid default notice.

24.     Plaintiff has incurred legal fees for the prosecution of this action as a result of the breach of contract by Caliber and LSF9.

WHEREFORE, Plaintiff demands Judgment against LSF9 and Caliber for compensatory damages arising from the breach of contract by LSF and Caliber along with legal fees and costs and  legal fees pursuant to R.I.G.L.§ 9-1-45  for breach of contract.

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 1:16:10 PM
Envelope: 737872
Reviewer: Lindsay Zuercher

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 7 of 36 PageID #: 51

August 31, 2016

DAVID GRIMALDI
By his Attorney

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
jbelaw@aol.com

## COUNT II

## VIOLATION OF THE COVENANT OF GOOD FAITH AND DEALING IN COMMENCING A FORECLOSURE SALE OF THE PLAINTIFF'S HOME WITHOUT THE MANDATORY FACE TO FACE MEETING NOTICE WHICH WAS REQUIRED BY THE TERMS OF THE PLAINTIFF'S MORTGAGE

25.    Paragraphs 1- 44 are incorporated by reference.

26.    The mortgage contract between Plaintiff and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

27.    The mortgage contract incorporates the Rhode Island Statutory Power of Sale and the HUD Regulations requiring a face to face meeting prior to sending a default notice or acceleration notice to the mortgagor.

28.    The Statutory Power of Sale could only be invoked by sending Plaintiff the following documents:

a.    A face to face meeting between the Plaintiff and the mortgagee or the loan servicer was a precondition to a default letter pursuant to the term of the mortgage.
b.    No default could be declared without a face to face meeting.

6

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 7:32 PM
Envelope: 737872
Reviewer: Lindsay Zuercher

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 8 of 36 PageID #: 52

    c.     A subsequent acceleration letter from the lender to the Plaintiff was required to be sent.

    d.     A Notice of Foreclosure was required to be sent pursuant to R.I.G.L. 34-27-4  only after these conditions had been met.

29.    Caliber and LSF9 violated the covenant of good faith and dealing by seeking to exercise the statutory power of sale without the lender having first provided a face to face meeting to the Plaintiff pursuant to the term of the mortgage.

30.    The failure to have a face to face meeting prior to sending a default letter as required by the mortgage contract was an action taken contrary to the contractual obligations of the parties.

31.    As a result of the Plaintiff has incurred the following damages:

    a.     His mortgage loan account was charged fees and expenses due to the foreclosure costs charged despite the failure to provide him a face to face meeting.

    b.     he has incurred emotional damages from the purported sale and actions of the Defendants who have sent them letters which indicated to them that he would be foreclosed on August 31, 2016.

    c.     They have incurred attorney fees and costs to redress this improper action of Caliber and LSF9 and for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.  He has agreed to pay legal fees at the rate of $400.00 per hour or out of Court legal work and $450.00 per hour for in Court legal work.

32.    The conduct of Caliber and LSF9 in proceeding with this purported foreclosure sale, without the authority to do so was willful, wanton and reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff demands Judgment for actual damages, punitive damages, interest costs and attorney fees against Caliber and LSF9, jointly and severally.

DAVID GRIMALDI
By his Attorney

August 31, 2016

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
jbelaw@aol.com

## COUNT III

## CLAIM FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

33.     Paragraphs   1-32 are incorporated by reference.

34.     Plaintiff will be irreparably harmed if the foreclosure sale that is scheduled for August 31, 2016 at 2:00 PM by Defendants occurs and causes the sale of Plaintiff's home.

35.     Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

36.     The failure of the Defendant to comply with the HUD regulations incorporated in the terms of the mortgage renders any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to conduct this foreclosure.

37.     Plaintiff lives in this property, as their principal residence.

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 1:31:06 PM
Envelope: 737872
Reviewer: Lindsay Zuercher

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 10 of 36 PageID #: 54

38.    These facts demonstrate that Plaintiff has a substantial likelihood of success.  Likewise a foreclosure of Plaintiff's  property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants.

39.    Such relief sought by Plaintiff will not disserve the public interest if imposed.

40.    Since there has been no compliance with the HUD regulations and the terms of the mortgage requiring a Face to Face meeting as a prerequisite to the declaration of default, any foreclosure will be void as Plaintiff was not provided a face to face meeting.

41.    Plaintiff has incurred actual damages as the result of the conduct of the Defendant in not complying with the provisions of the mortgage.  His mortgage loan account has been charged legal fees and expenses for postage and advertising for a foreclosure sale without providing for mediation as required.

42.    Plaintiff has incurred legal fees and expenses due to the conduct of the Defendant in not complying with the provisions of the HUD regulations and the terms of the mortgage.

WHEREFORE, Plaintiff demands that this Court:

a.    Declare that all actions of the Defendants in attempting to foreclose on the Plaintiff's property, without complying with the provisions of the HUD regulations incorporated into the terms of the mortgage  are void.

b.    Declare that the Plaintiff is entitled to a face to face meeting prior to the declaration of default.

c.    Grant a Preliminary Injunction Restraining and Enjoining Caliber, LSF9 and any other entity acting on their behalf from conducting a foreclosure sale at 19  South Glen Drive, Coventry,  Rhode Island pending a hearing on a Permanent Injunction

Grant a Permanent Injunction Restraining and Enjoining Caliber, LSF9 and any other entity acting on their behalf from conducting a foreclosure sale at 19 South Glen Drive, Coventry, Rhode Island without first providing the Plaintiff a face to face meeting.

d.     Grant a Temporary Restraining Order and Permanent and Mandatory Injunction directing Caliber and LSF9 to comply with the HUD Regulations and the terms of the mortgage and provide the Plaintiff a face to face meeting before attempting to declare the Plaintiff's mortgage loan in default.

e.     Award the Plaintiff actual damages and compensatory damages and legal fees and costs against the Defendants for the violation of the HUD regulations and the terms of the mortgage

f.     Grant all other just and proper relief.

DAVID GRIMALDI
By his Attorney

August 31, 2016

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
jbelaw@aol.com

Plaintiff demands a Trial by Jury.

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:16 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 12 of 36 PageID #: 56

# EXHIBIT A

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:15:16 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 13 of 36 PageID #: 57

After Recording Return To:

SHAMROCK FINANCIAL CORPORATION
865 WATERMAN AVE
EAST PROVIDENCE, RHODE ISLAND 02914
Loan Number: 2009010501

INST: 00001299
Bk: 1827 Pg: 680

───────── [Space Above This Line For Recording Data] ─────────

# MORTGAGE

FHA CASE NO.

451-1004646

**MIN:** 100264720090105018

THIS MORTGAGE ("Security Instrument") is given on  FEBRUARY 27, 2009
The mortgagor is  DAVID GRIMALDI

("Borrower").

This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. **MERS is the nominee for Lender,** as hereinafter defined, and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. **(888) 679-MERS.**  SHAMROCK FINANCIAL CORPORATION, A RHODE ISLAND
CORPORATION                                                                                                ("Lender")
is organized and existing under the laws of  RHODE ISLAND                                                    ,
and has an address of  865 WATERMAN AVE, EAST PROVIDENCE, RHODE ISLAND
02914                                                                                                              .
Borrower owes Lender the principal sum of  TWO HUNDRED EIGHT THOUSAND ONE
HUNDRED SIXTY AND 00/100                         Dollars (U.S. $ 208,160.00              ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  MARCH 1, 2039              .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in  KENT                                        County, Rhode Island:

Rimtgz.fha.xml

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/30/2016 9:13:16 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

INST: 00001299
Bk: 1827 Pg: 681

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".

which has the address of                    19 SOUTH GLEN DRIVE
                                                     [Street]

          COVENTRY                    , Rhode Island      02816       ("Property Address"):
            [City]                                       [Zip Code]

Together with all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower
understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling
this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,
in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items
are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the
maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures
Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended
from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements
or disbursements before the Borrower's payments are available in the account may not be based on amounts due for
the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall
account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time

---

FHA RHODE ISLAND MORTGAGE - MERS
RIMTGZ.FHA 11/01/08

DocMagic *eForms* 800-649-1362
www.docmagic.com

Rimtgz.fha.xml

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/3/2016 9:17:16 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

INST:       00001299
Bk:      1827 Pg:
                                682

are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

Rimtgz.fha.xml

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:46:16 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

INST: 00001299
Bk: 1827 Pg: 683

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien, in legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not

Rimtgz.fha.xml

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:11:16 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

INST:    00001299
Bk:   1827 Pg:   684

paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)  **Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS

from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to   60 DAYS                             from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  **Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.  **Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  **Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.  **Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

15.  **Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16.  **Hazardous Substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply

Rimtgz.fha.xml

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:16:15 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

INST:   00001299
Bk:   1827 Pg:   685

to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 13. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

19. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

FHA RHODE ISLAND MORTGAGE - MERS
RIMTGZ.FHA 11/01/08

Page 6 of 9

DocMagic *EForms* 800-649-1362
www.docmagic.com

Rimtgz.fha.xml

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:15:16 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

INST:    00001299
Bk:    1827 Pg:    686

20. **No Outstanding Automatic Orders in Domestic Relations Cases**. Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

21. **Homestead Estate**. If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

22. **Loan Fees**. As provided in Rhode Island General Laws § 34-23-6, brokerage fees, loan fees, points, finder's fees, origination fees, or similar charges paid by the Borrower in connection with the loan secured by this Security Instrument and disclosed to the Borrower will not be refunded in the event the loan is prepaid in whole or in part.

23. **Riders to this Security Instrument**. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider            ☐ Graduated Payment Rider      ☐ Growing Equity Rider
☐ Planned Unit Development Rider  ☐ Adjustable Rate Rider        ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider    ☐ Other [Specify]

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

FHA RHODE ISLAND MORTGAGE - MERS
RIMTGZ.FHA  11/01/08

Page 7 of 9

DocMagic *eForms* 800-649-1362
www.docmagic.com

Rimtgz.fha.xml

CASE 1:16-CV-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 20 of 36 PageID #: 64

INST: 00001299
Bk: 1827 Ps: 687

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DAVID GRIMALDI                    -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                          -Borrower

Witness: _____          Witness: _____

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:15:26 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

INST: 00001299
Bk: 1827 Ps: 688

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of Rhode Island

County of __KENT_____

In __Warwick_____ in said County, on the _____27th_____ day of
February, 2009_____ , before me personally appeared DAVID GRIMALDI_____

_____

_____ ,

each and all to me known, and known by me to be the party(ies) executing the foregoing instrument, and he/she/they
acknowledged said instrument, by him/her/them executed to be his/her/their free act and deed.

_____
Signature

_____
Printed or Typed Name

(Seal)                                My commission expires: _1 | 23 | 2010_

FHA RHODE ISLAND MORTGAGE - MERS
RIMTGZ.FHA  11/01/08                    Page 9 of 9                    DocMagic eForms 800-649-1362
                                                                      www.docmagic.com

Rimtgz.fha.xml

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:15:15 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

Loan Number: 2009010501

INST: 00001299
Bk: 1827 Pg: 689

Date: FEBRUARY 27, 2009

Property Address: 19 SOUTH GLEN DRIVE, COVENTRY, RHODE ISLAND 02816

# EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : _____

DocMagic EForms 800-649-1362
www.docmagic.com

Rimugz.fha.xml

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:15:10 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

CASE 9:16-cv-00519-WES-PAS    Document 1-3    Filed 09/15/16    Page 23 of 36 PageID #: 67

INST: 00001299
Bk: 1827 Pg:

690

## EXHIBIT "A"

That certain lot or parcel of land, with all the buildings and improvements thereon, situated on the southwesterly side of Glen Drive in the Town of Coventry, County of Kent and State of Rhode Island, laid out and delineated as Lot No. 14 (fourteen) on that plat entitled, "SUBDIVISION NO. 2 LAKEVIEW TERRACE COVENTRY, RI OWNED BY TEGLIA FORCIER, INC. JULY 1958 A.R. MCGUINESS ENGR.", which plat is recorded with the Recorder of Land Evidence in said Town of Coventry in Plat Book 5 at Page 53.

TOWN OF COVENTRY, R.I.
Mar 03,2009 10:17:57A
Cheryl A George, TOWN CLERK

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:16:16 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

# EXHIBIT B

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:16:19 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

INST: 00001673
Bk: 1950 Pg: 628

Loan #: 1771889811

TOWN OF COVENTRY, R.I.
Mar 07,2013 11:19:58A
Cheryl A George, TOWN CLERK



## ASSIGNMENT OF MORTGAGE

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.
FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SHAMROCK FINANCIAL CORPORATION, ITS SUCCESSORS AND ASSIGNS PO BOX 2026, FLINT, MI, 48501 by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 02/27/2009, made by DAVID GRIMALDI to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SHAMROCK FINANCIAL CORPORATION, and recorded in the Land Evidence Records in the Town of COVENTRY, State of Rhode Island, in Volume 1827, Page 680. .

Property is commonly known as: 19 S GLEN DRIVE, COVENTRY, RI 02816.

IN WITNESS WHEREOF, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SHAMROCK FINANCIAL CORPORATION, ITS SUCCESSORS AND ASSIGNS has hereunto set its hand on ___02__ / _16_ /2013 (MM/DD/YYYY).

By: Donesha Johnson
Donesha Johnson
ASST. SECRETARY

Signed and delivered in the presence of:

_____ Witness

STATE OF LOUISIANA
PARISH OF OUACHITA
On ___02__ / _16_ /2013 (MM/DD/YYYY), before me appeared Donesha Johnson _____, to me personally known, who did say that he/she/they is/are the ASST. SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SHAMROCK FINANCIAL CORPORATION, ITS SUCCESSORS AND ASSIGNS and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
V. K. Wilson
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

JPCAS 19301259 -3 CHASE CJ4666759  MIN 100264720090105018 MERS PHONE 1-888-679-6377
T1213022616  [C] FRMRII

*19301259*

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:15:15 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 26 of 36 PageID #: 70

# EXHIBIT C

Recording Requested by/Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE , CA 91209-9071
Phone #: 800-331-3282

INST:       00004837
Bk:   1993  Pg:      829

This Instrument Prepared By:
JPMC Mortgage
JAMEIKA WATSON
780 KANSAS LANE 2ND FLOOR
Monroe , LA 71203

TOWN OF COVENTRY, R.I.
Sep 22,2014 02:31P
Cheryl A George, TOWN CLERK

---

## RHODE ISLAND ASSIGNMENT OF MORTGAGE



For Value Received, the undersigned holder of a Mortgage, JPMorgan Chase Bank, National Association , (herein "Assignor") with an address at 700 Kansas Lane, MC 8000, Monroe, LA, 71203 does hereby grant, sell, assign, transfer and convey, unto Secretary of Housing and Urban Development, Washington, D.C. and his/her Successors and Assigns , (herein "Assignee"), whose address is 451 7th Street S.W., Washington, DC, 20410 , a certain Mortgage dated 02/27/2009 and recorded on 03/03/2009, made and executed by DAVID GRIMALDI , to and in favor of Mortgage Electronic Registration Systems ("MERS") AS NOMINEE FOR SHAMROCK FINANCIAL CORPORATION, A RHODE ISLAND CORPORATION upon the following described property situated in Coventry Town, State of Rhode Island:
Property Address: 19 SOUTH GLEN DR, COVENTRY, RI, 02816
PIN #: 0015-067.000

such Mortgage having been given to secure payment of Two Hundred Eight Thousand One Hundred Sixty dollars and Zero cents  ($208,160.00), which Mortgage is of record in Book, Volume, or Liber No. 1827 at Page 680 No. 00001299, in the Office of the Town Clerk of the city or Recorder of Deeds of Coventry Town, State of Rhode Island.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 07/24/2014.

Assignor:
JPMorgan Chase Bank, National Association

By:
Jameika Watson
Its: Vice President

STATE OF LA, Ouachita Parish

On this day, 07/24/2014 , before me, Melanie K. Shrell  a Notary Public, appeared Jameika Watson , to me personally known, who, being by me duly sworn did say that he/she is the Vice President  of JPMorgan Chase Bank, National Association  and that the seal affixed to said instrument is the seal of said national association and that the instrument was signed on behalf of the national association by authority of its Board of Directors or Trustees and that Jameika Watson  acknowledged the instrument to be the free act and deed of the national association.

Notary Public: Melanie K. Shrell

MELANIE K. SHRELL
Notary Public
State of Louisiana
Lincoln Parish
La Bar # 30961
My Commission is for Life

Page # 1   44218132 RPY Ref# 873007 25497 RI554 Coventry Town 1771889811 2014 SFLS Hudson Caliber

# EXHIBIT D

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:16:10 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 29 of 36 PageID #: 73

INST: 00000963
Bk: 2004 Pg: 693

RECORDING REQUESTED BY AND WHEN RECORDED RETURN TO:
Caliber Home Loans, Inc.
13801 Wireless Way
Oklahoma City, OK 73134

Space Above This Line For Recorder's Use

Prepared By:    Nancy Ortiz      Loan Number:    9803674515
MERS Min:    100264720090105018     Caliber Document ID#   172550

Parcel ID: --

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned SECRETARY OF HOUSING AND URBAN DEVELOPMENT whose address is 451 7TH ST, S.W., WASHINGTON D.C. 20410, hereby grants, assigns and transfers to U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST whose address is 2711 N HASKELL AVENUE, 1700 , DALLAS, TEXAS 75204 all beneficial interest under that certain Deed of Trust dated 2/27/2009 executed by DAVID GRIMALDI to SHAMROCK FINANCIAL CORP., A RHODE ISLAND CORP. in the amount of $208,160.00 and recorded on 3/3/2009 as Instrument # 00001299, in Book/Volume or Liber No. 1827 , Page/folio 680 of Official Records in the County Recorder's office of KENT County, RI, describing land herein as: 'SEE ATTACHED 'EXHIBIT A'.

Property Address:    19 S GLEN DR, COVENTRY RI 02816

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated this 9th day of January of 2015

Witness #1   Brandi Coulter

Witness #2   Debbie Elliott

SECRETARY OF HOUSING AND URBAN
DEVELOPMENT, BY CALIBER HOME LOANS, INC., AS
ATTORNEY IN FACT

By:      Kendra Cook
Title:    Vice President

County of Oklahoma )
State of Oklahoma )

On January 9, 2015 before me, Nancy Ortiz, a Notary Public in and for Oklahoma County, in the State of Oklahoma, personally appeared, Kendra Cook, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand official seal.

Notary Name:    Nancy Ortiz        My Commission Expires:    9/29/2016

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/30/2016 9:13:15 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 30 of 36 PageID #: 74

# EXHIBIT E

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 31 of 36 PageID #: 75

# HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304
Business Hours: Monday-Friday 8:00 AM-to 5:30 PM
*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

July 8, 2016

To:    Mr. David Grimaldi
19 SOUTH GLEN DR
COVENTRY, RI 02920

## NOTICE OF MORTGAGE FORECLOSURE SALE

Re:   19 SOUTH GLEN DR, COVENTRY, Rhode Island

Please be advised that this office has scheduled a foreclosure sale to take place at 2:00 p.m. on August 31, 2016 at the above-referenced premises. We are enclosing a copy of the foreclosure advertisement for your records. You will not receive any further notice of the sale.

Our experience has shown us that you are likely to benefit if you allow qualified bidders at the foreclosure sale to enter and inspect the premises. This may result in a higher purchase price. If you are willing to allow qualified bidders to enter and inspect the premises, please be present at the time of the foreclosure sale.

You may order a reinstatement or payoff 24 hours a day on-line by going to www.hloreinstatement.com or to www.hlopayoff.com. Please follow the instructions contained on the web page. Please note that only requests made by owners, borrowers, mortgagors and authorized parties will be processed. You may also contact us during business hours to request a reinstatement or payoff by calling (617) 558-0598. When completing the on-line form or when calling our office, please reference your Case Number 201304-0463so that we may process your request more quickly.

## IMPORTANT NOTICE

A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:16 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 32 of 36 PageID #: 76

## Rhode Island General Laws Section 34-27-4(d)

(d)     Foreclosure sales affecting servicemembers. –

(1)     The following definitions shall apply to this subsection and to subsection (c):

(i)     ''Servicemember'' means a member of the army, navy, air force, marine corps, or coast guard and members of the national guard or reserves called to active duty.

(ii)    ''Active duty'' has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304.  In the case of a member of the national guard, or reserves ''Active duty'' means and includes service under a call to active service authorized by the president or the secretary of defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the president and supported by federal funds.

(2)     This subsection applies only to an obligation on real and related personal property owned by a servicemember that:

(i)     Originated before the period of the servicemember's military service or in the case of a member of the national guard or reserves originated before being called into active duty and for which the servicemember is still obligated; and

(ii)    Is secured by a mortgage or other security in the nature of a mortgage.

(3)     Stay of right to foreclose by mortgagee. - Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within nine (9) months of completion of active duty or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

(4)     Stay of proceedings and adjustment of obligation. - In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

(i)     Stay the proceedings for a period of time as justice and equity require; or

(ii)    Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5)     Sale or foreclosure. - A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

Case Number: KC-2016-0876
Filed in Kent County Superior Court
Submitted: 8/31/2016 9:16 AM
Envelope: 737872
Reviewer: Lindsay Zuercher

Case 1:16-cv-00519-WES-PAS   Document 1-3   Filed 09/15/16   Page 33 of 36 PageID #: 77

(i)    Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

(ii)    If made pursuant to an agreement of all parties.

(6)    Penalties. - A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year ,or both.  The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7)    Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearing on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

*Harmon Law Offices, P.C.*
Attorney for Present holder of mortgage

/NRA/201304-0463/Enclosure

**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

## MORTGAGEE'S SALE

### 19 SOUTH GLEN DR COVENTRY, RI

The premises described in the mortgage will be sold subject to all encumbrances and prior liens on August 31, 2016 at 2:00 p.m. on the premises, by virtue of the power of sale contained in a mortgage by David Grimaldi dated February 27, 2009 and recorded in the COVENTRY Land Evidence Records in Book 1827, Page 680, the conditions of said mortgage having been broken.

$5,000.00 in cash, certified or bank check is required to bid. Other terms will be announced at the sale.

HARMON LAW OFFICES, P.C.
Attorney for the Holder of the Mortgage
150 California Street
Newton, MA 02458
(617) 558-0500
201304-0463 - PRP

**STATE OF RHODE ISLAND**        **SUPERIOR COURT**
**KENT, SC**

**DAVID GRIMALDI**        Kc-2016-0876

      **VS**
**US BANK NATIONAL ASSOCIATION, AS**
**TRUSTEE FOR LSF9 MASTER**
**PARTICIPATION TRUST, ALIAS,**
**CALIBER HOME LOANS, INC.,**

## TEMPORARY RESTRAINING ORDER

    This matter came to be heard on  August 31, 2016 on Plaintiff's

Motion for a Temporary Restraining Order  restraining and enjoining the

Defendant from conducting a foreclosure sale on Plaintiff's property located

at 19 South Glen Drive, Coventry, Rhode Island.  After hearing thereon, it is

hereby

ORDERED

    1.    The Plaintiff's Motion for a Temporary Restraining Order is

granted.  The Defendants, Caliber Home Loans, Inc. and US Bank National

Association as Trustee for LSF9 Master Participation Trust and

any other entity acting on their behalf are restrained and enjoined from

continuing the advertising  of a foreclosure sale, continuing a foreclosure

sale  taking any action to foreclose on the Plaintiff's property located at 19

South Glen Drive, Coventry, Rhode Island on  August 31, 2016, continuing

any sale or continuing any advertising of a foreclosure sale at any other time

until further Order of this Court.

    2.     This matter is continued to  September 9, 2016   for

hearing on Preliminary Injunction.


ENTER:

_____
Justice

August 31, 2016

PER ORDER:

_____
Clerk

PRESENTED BY:

/s/ John B. Ennis_____
JOHN B. ENNIS, ESQ., #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230


## CERTIFICATION

    I hereby certify that I emailed a copy of the within Order to the

following on this 31st day of  August,  2016.


Harmon Law Offices, PC
150 California Street
Newton, MA 02458

             /s/ John B. Ennis_____