## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

**DAVID GRIMALDI**

      **VS**                               **CA 1:16-CV-519-S-PAS**

**US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, ALIAS, CALIBER HOME LOANS, INC., JOHN DOE, ALIAS**

### MEMORANDUM IN SUPPORT OF OBJECTION TO MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This matter is before the Court on Defendants' second Motion for Summary Judgment. Plaintiff, in the Kent County Superior Court filed a three count complaint alleging breach of contract , breach of duty of good faith and dealing and injunctive relief against US Bank National Association as Trustee for LSF9 Master Participation Trust and Caliber Home Loans, Inc. the loan servicer for this mortgage. He was granted a Temporary Restraining

Order by Justice Gallo, on August 31, 2016 with a hearing on Preliminary Injunction scheduled for September 9, 2016.  The Defendants removed this case to this Court on September 15, 2016 despite the fact that the contract

claims did not involve any claims for damages in excess of $75,000.00 and

the relief in the injunction count merely sought to compel Defendants to

comply with the contractual remedies provided in the mortgage and the

HUD regulations incorporated into the mortgage.

## A FACE TO FACE MEETING IS A PRECONDITION TO ACCELERATION AND FORECLOSURE

These claims arise from the fact that this is a FHA mortgage, which

incorporates Regulations of the Secretary of Housing and Urban

Development specifically 24 C.F.R. 203.64. This regulation is incorporated

in the terms of the mortgage and provides that the Security Instrument did

not authorize acceleration and foreclosure if not permitted by the regulations

of the Secretary. Plaintiffs contend that before any alleged default or

acceleration of the loan was declared and foreclosure commences the Lender

or its assignee was required to comply with the Mortgage.  Paragraph 9 of

the Mortgage does not authorize acceleration or foreclosure if  no

compliance with the regulations first occurs.  These regulations provide that

the mortgagee must have a face to face meeting with the mortgagor, or make

a reasonable effort to arrange such a meeting, before three full monthly

installments due on the mortgage are unpaid.  No such face to face meeting

was attempted until 2017 and it is undisputed that no representative of Chase

or Caliber or any entity, prior to the attempted foreclosure, visited the

Plaintiff's home at least once to make an effort to schedule a face to face

meeting. Thus Plaintiff contends that since there was no compliance with

this regulation, then the loan could not be accelerated and a foreclosure was

not permitted in conjunction with the terms of the mortgage. The fact that a

subsequent face to face meeting occurred recently did not render the prior

conduct of the Defendants reasonable or compliant with the terms of the

mortgage.

24 CFR 203.604, which is incorporated in the terms of the mortgage

provides:

> 203.604
> Contact with the mortgagor.
> (a) [Reserved]
> (b) **The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.**
> **( emphasis added)** If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, or at least 30 days before assignment is requested if the mortgage is insured on Hawaiian home land pursuant to section 247 or Indian land pursuant to section 248 or if assignment is requested under § 203.350(d) for mortgages authorized by section 203(q) of the National Housing Act.
> (c) A face-to-face meeting is not required if:
> (1) The mortgagor does not reside in the mortgaged property,
> (2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,
> (3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or
(5) A reasonable effort to arrange a meeting is unsuccessful.
(d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. **Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property**, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property. (emphasis added)
(e) (1) For mortgages insured pursuant to section 248 of the National Housing Act, the provisions of paragraphs (b), (c) and (d) of this section are applicable, except that a face-to-face meeting with the mortgagor is required, and a reasonable effort to arrange such a meeting shall include at least one trip to see the mortgagor at the mortgaged property, notwithstanding that such property is more than 200 miles from the mortgagee, its servicer, or a branch office of either. In addition, the mortgagee must document that it has made at least one telephone call to the mortgagor for the purpose of trying to arrange a face-to-face interview. The mortgagee may appoint an agent to perform its responsibilities under this paragraph.
(2) The mortgagee must also:
(i) Inform the mortgagor that HUD will make information regarding the status and payment history of the mortgagor's loan available to local credit bureaus and prospective creditors;
(ii) Inform the mortgagor of other available assistance, if any;
(iii) Inform the mortgagor of the names and addresses of HUD officials to whom further communications may be addressed.

Paragraph 9 of the mortgage, thus contains conditions for the exercise of the statutory power of sale. Specifically the provisions in paragraph 9 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.  There was no compliance with the terms of the mortgage

to exercise the statutory power of sale as indicated above.  The Plaintiff never had any meeting even though the loan servicer and the owner of the mortgage from origination in 2009 until the present and at all other times had either a main office or a branch office within 200 miles of Rhode Island.

Defendants' motion arises from the claim that the three letters cited by the Defendants constituted the only effort required prior to acceleration and foreclosure. However the letters themselves are deficient and clearly do not meet the criteria of the regulation.  For example the letters do not offer a face to face meeting. Rather these letters were merely an offer to the Plaintiff to opt out of a face to face meeting, stating:

As required by the U.S. Department of Housing and Urban Development(HUD), we have scheduled a JMA (JM Adjustment Services) representative to visit your home on behalf of Chase within the next 20 days to discuss a possible repayment plan. . . .If you have any questions or prefer not to have a representative visit your home, please call us at 877-293-0728 to discuss your options

The Plaintiff's affidavit makes it clear that no representative of Chase ever visited the Plaintiff at his home or called him to make an appointment. Thus there is a genuine issue of material fact as to whether there was compliance with the terms of the mortgage. The letters do not establish any compliance with the regulation, which was ignored, first by Chase and then again by Caliber and US Bank, which sought to foreclose without the contractual ability to do so due to the failure to offer a face to face meeting which was

rejected by the homeowner after at least one trip to his home. In fact no trips to his home were ever made.

This has been addressed in many cases.  In *Silveira v Wells Fargo* , Bankr.  D. MA, 12-ap-4036  (May 3, 2013), the Bankruptcy Court  found that the HUD regulations mentioned in this case were incorporated by reference into the mortgage contract and did not grant the Motion to Dismiss filed by Wells Fargo:

> The Silveiras' promissory note to Wells Fargo  provides:
> 7.(B) Default: If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary [of Housing and Urban Development] in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.... This Note does not authorize acceleration when not permitted by HUD regulations.
>
> The mortgage provides:
> 9. Grounds for Acceleration of Debt.
> (a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument....
>
> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations  [*45] of the Secretary.
>
> **The _HN24_ HUD regulations require a mortgagee to undertake certain actions before accelerating a loan for payment default, including giving a default notice and in**

**many cases attending a face-to-face meeting with the mortgagor before a third month's default**. 24 C.F.R. § 203.602 and § 203.604. While these regulations do not provide a mortgagor with a private right of action, *Mitchell v. Chase Home Finance LLC*, 06-CV-2099-K, 2008 U.S. Dist. LEXIS 17040, 2008 WL 623395, at *3 (N.D. Tex. March 4, 2008), if they are incorporated into the various loan documents, as they were in this case, they become enforceable by the parties to the loan documents. *Sinclair v. Donovan*, 11-cv-00010, 2011 U.S. Dist. LEXIS 128220, 2011 WL 5326093 (S.D. Ohio Nov. 4, 2011); *Mullins v. GMAC Mortg., LLC*, 09-cv-00704, 2011 U.S. Dist. LEXIS 35210, 2011 WL 1298777 (S.D.W. March 31, 2011); *Kersey v. PHH Mortg Corp.*, 682 F. Supp.2d 588, 596-97 (E.D. Va. 2010), *vacated for lack of jurisdiction*, 09cv726, 2010 U.S. Dist. LEXIS 82802, 2010 WL 3222262 (E.D. VA. Aug. 13, 2010); *Shelton v. Wells Fargo Bank, N.A. (In re Shelton)*, 481 B.R. 22, 28 n. 19 (Bankr. W.D.Mo. 2012). *See also BAC Home Loans Servicing, LP v. Taylor*, No. 26423, 2013 Ohio 355, 986 N.E.2d 1028, 2013 WL 456890, at *5-6 (Ohio App. 9 Dist. Feb. 6, 2013) (violation of HUD regulations may be [*46] asserted defensively in action for judicial foreclosure); *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 733, 724 S.E.2d 196, 200 (2012) ("Borrowers may sue to enforce conditions precedent to foreclosure [namely, HUD's requirement of a face-to-face meeting] even if they were the first party to breach the note secured by a deed of trust through non-payment.") and *Lacy-McKinney v. Taylor, Bean & Whitaker Mortgage Co.*, 937 N.E. 2d 853 (Ind. Ct. of App. 2010) (same).

We find that the HUD—FHA [*48] regulations concerning loss mitigation are enforceable terms of the mortgage contract between the parties and that Plaintiffs cannot be denied the benefit of these provisions by virtue of the fact of simple default.

*Sinclair*, 2011 U.S. Dist. LEXIS 128220, 2011 WL 5326093, at *7-8 (internal citation omitted and emphasis added by *Sinclair*).

Thus a local Bankruptcy Court found the contractual applicability of these

regulations and did not dismiss the case based on this allegation

In *Taylor v BAC,* 986 NE 2d 1028 (Ohio App.,  2013). the Ohio

Court of  Appeals came to the same conclusion and found that the

regulations were incorporated by reference in the mortgage.

[*P18]  In this case, the note provides that, "[i]f Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. . . . In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not [***17] permitted by HUD regulations. As used in this Note, 'Secretary' means the Secretary of Housing and Urban Development or his or her designee." In this case, the HUD regulations were incorporated into the note and made a part of the contract. Three times in one paragraph the note provided that the Lender's rights regarding default are subject to HUD regulations. The mortgage contains similar language. Under section nine, captioned "Grounds for Acceleration of Debt[,]" the mortgage provides that, "Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full . . . " Under subsection (d) of that section, the mortgage provides that "[i]n many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." Contrary to BAC Home Loans' argument that federal regulations "do not place any limitations on the mortgagee's right to accelerate upon default[,]" the contract documents in this case  [***18] subject the holder's rights upon default to applicable HUD regulations.

[*P19]  BAC Home Loans' argument about a "private right of

action" has no [**1035] bearing on whether the loan is subject to HUD regulations and whether failure to comply may be used defensively to bar foreclosure. The note and mortgage at issue in this case unambiguously provide that the rights of the lender in the case of default by the borrower are "limited by regulations of the Secretary [of Housing and Urban Development or his or her designee] Those regulations include 24 C.F.R. 203.604, which requires a face-to-face interview with the mortgagor prior to initiating a foreclosure action. BAC has not argued that it satisfied the regulation or that some exception applied in this situation. It makes no difference whether HUD regulations are meant to govern only the relationship between HUD and mortgagees. In this case, the mortgagee and the mortgagor agreed to limit the mortgagee's rights to accelerate and foreclose based on applicable HUD regulations. Thus, by contract, BAC Home Loans was required to comply with the HUD regulations governing acceleration and foreclosure, and the Taylors were entitled to use any failure to do [***19] so as a shield in the subsequent foreclosure case.

 [*P20]  BAC Home Loans has argued that, even if "the HUD regulations somehow govern the relationship between a mortgagee and mortgagor . . . , it is not disputed that [the plaintiff] did undertake loss mitigation efforts via the mediation process." BAC Home Loans has explained that the parties engaged in mediation after the complaint was filed, but the mediation failed because the Taylors did not qualify for a loan modification. Its argument seems to be that there was no point in complying with the HUD regulation before filing a complaint because, if the Taylors did not qualify for a loan modification five months into the litigation, they would not have qualified before the filing either, so any face-to-face meeting would have been unproductive. Therefore, BAC Home Loans has urged this Court not to adopt a "rigid reading of the HUD regulations." It has also argued that summary judgment in its favor was appropriate, regardless of whether it made any effort to comply with the HUD regulation before initiating the foreclosure action because the issue of whether it complied with the regulation is not material to the litigation.

*Taylor* at pp 1034-1036

In  *Bagley v. Wells Fargo Bank, N.A. et al,* 12-cv-617,  E.D. VA.

(January 29, 2013), the District Court came to the same conclusion:

> Firstly, Plaintiffs argue that Wells Fargo  failed to comply with § 203.604, which provides:
> The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, or at least 30 days before assignment is requested if the mortgage is insured on Hawaiian home land pursuant to section 247 or Indian land pursuant to section 248 or if assignment is requested under § 203.350(d) for mortgages authorized by section 203(q) of the National Housing Act.
>
> § 203.604(b). Plaintiffs assert that they "fell more than three months behind on the note while living in the home," (Am. Compl. ¶ 13), and that "no creditor entity had a face-to-face [*12] meeting with the Bagleys or with either of them, or made any attempt to arrange for such face-to-face meeting." (Am. Compl. ¶ 14.) Accordingly, Plaintiffs assert that the foreclosure sale was void, or alternatively, voidable.
>
> Defendants argue that Plaintiffs have not sufficiently stated a claim because Plaintiffs conflate the two situations in which § 203.604 requires a face-to-face meeting: (1) before three full monthly installments are unpaid; or (2) at least 30 days before commencement of foreclosure if default occurs in a repayment plan arranged other than during a personal interview. *See Mathews*, 283 Va. at 742-43(Kinser, J., concurring). Further, Defendants argue that Plaintiffs do not claim that they were ready, willing, and able to cure the default if they had had the

meeting, and thus, Plaintiffs cannot establish that they were damaged by a failure to comply with § 203.604.

Plaintiffs have sufficiently alleged that Defendants violated the Deed of Trust by foreclosing on the home without complying with § 203.604. In Virginia, "a lender must comply with all conditions precedent to foreclosure in a deed of trust even if the borrowers are in arrears." *Mathews*, 283 Va. at 730; *see [*13] also Bayview Loan Servicing, LLC v. Simmons*, 275 Va. 114, 654 S.E.2d 898 (2008). Further, the Supreme Court of Virginia held in *Mathews v. PHH Mortgage*, a case in which the deed of trust also required compliance with FHA regulations, that "the face-to-face meeting requirement [of § 203.604(b)] is a condition precedent to the accrual of the rights of acceleration and foreclosure incorporated into the Deed of Trust." 283 Va. at 736-37. In this case, Plaintiffs clearly allege that they failed to pay their mortgage installments for more than three months, and that the Defendants violated § 203.604 because they never arranged a face-to-face meeting or attempted to do so. (*See* Am. Compl. ¶¶ 13-14.) Accordingly, by asserting that Defendants failed to comply with § 203.604, Plaintiffs have sufficiently alleged that Defendants failed to satisfy a condition precedent to foreclosing on the home, and thus, have breached the Deed of Trust. [3]

The *Bagley* Court recognized the contractual rights of the Plaintiff similar to this case based on the breach of contract.

In *Kersey v. PHH,* 682 F. Supp. 2d 588 (E.D. VA, 2010) the Court also found these regulations applicable to a declaratory judgment and breach of contract claim in seeking to set aside a foreclosure:

Under the terms of the Deed of Trust that secured the loan, the holder of the Note can [**2] foreclose on the home in the event of arrearage on payment of the Note only if the holder has complied with FHA regulations. One such regulation incorporated into the terms of the Deed of Trust is 24 C.F.R. §

203.604 that provides in relevant part as follows: **HN1** "The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . . ." 24 C.F.R. § 203.604(b).

The Plaintiff fell into arrears on the Note. The Defendant appointed Professional Foreclosure Corporation of Virginia ("PFC") as substitute trustee on the Deed of Trust and instructed PFC to foreclose on the Plaintiff's home. PFC then scheduled a foreclosure sale without the Defendant or any other creditor entity ever having a face-to-face meeting with the Plaintiff or attempting to arrange for such a meeting. Believing [**3] that the Defendant's failure to have, or attempt to have, a face-to-face meeting violated the conditions set forth in 24 C.F.R. § 203.604(b) as incorporated into the Deed of Trust, the Plaintiff filed her Complaint on October 14, 2009 in Richmond City Circuit Court seeking a declaratory judgment that the Defendant has not complied with the terms of the Deed of Trust sufficient to allow the Defendant to go forward with a foreclosure of the home. The Defendant properly removed the matter to this Court on November 18, 2009. On November 25, 2009, the Defendant moved to dismiss [*591] the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The Plaintiff has responded, the Defendant has replied, and this matter is ripe for the Court's decision. . . . .
Here, there is a presently justiciable controversy as to whether the Defendant owed the Plaintiff the duty to have, or attempt to have, a face-to-face meeting with her prior to commencing foreclosure. This matter clearly presents a distinct and [*592] ripe controversy as to the relative rights and duties under the parties' relevant contract - the Deed of Trust - and the Court has the power to declare what "the rights and other legal relations" of the parties are. 22 U.S.C.A. § 2201(a) (West

2009). The fact that the Plaintiff may also arguably have a claim for breach of contract is irrelevant, as HN6 "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. The Plaintiff's suit does not call for an advisory opinion, and a declaratory judgment is appropriate and in the public interest in this case, as it serves a useful purpose in clarifying and settling the legal relations in issue, and it will terminate and afford relief from the uncertainty, insecurity, and controversy [**7] giving rise to the proceeding.

The Defendant has moved to dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In support of its motion, the Defendant advances two arguments. First, the Defendant argues that 24 C.F.R. § 203.604 and the National Housing Act ("NHA") do not permit a private right of action, and, therefore, that the Plaintiff cannot "veil" what is actually a forbidden federal claim for violation of federal regulations as a claim brought pursuant to state contract law. Second, the Defendant argues that 24 C.F.R. § 203.604(c)(2) excepts the Defendant from having to conduct, or attempt to conduct, a face-to-face meeting with the Plaintiff prior to commencing foreclosure, and that the Defendant appropriately relied on HUD's own interpretation of 24 C.F.R. § 203.604(c)(2) that suggests that the Defendant is so excepted.

**A. The absence of a private federal cause of action available under the NHA or HUD regulations does not preclude the Plaintiff from bringing a declaratory [**9] judgment action based on rights and obligations under a contract governed by state law where the parties' contract incorporates as conditions of the contract the conditions contained in 24 C.F.R. § 203.604.**

The language of the Court in *Kersey* was unequivocal and clear, just as the language of this mortgage is clear and precise. No acceleration, a condition to statutory power of sale foreclosure is permitted unless the FHA

regulations are complied with by the mortgagee or the servicer.

In *Kersey* the Court also held that if the servicer had a branch office,

not a branch servicing office within two hundred miles, the plain language of

the regulation required that the face to face meeting be held:

> For the reasons stated above in section IV-B(2)(i),***HN23*** the plain
> language of 24 C.F.R. § 203.604(c)(2) does not restrict the term
> "branch office" to include only "servicing branch offices." Instead, the
> plain language indicates unambiguously that the mortgagee must
> have, or attempt to have, a face-to-face meeting with the mortgagor
> prior to commencing foreclosure proceedings if the mortgagee has
> *any* branch office, including a loan origination branch office, within
> 200 miles of the mortgaged property.

*Kersey* at p. 603. However in this case, since FHA/GNMA was the

mortgagee and had an actual office in Rhode Island,  any exception for more

than 200 miles was not met.

The case of *Hustler v. Wells Fargo Bank, N.A.*, 12-cv-2184,

(E.D., MO., September 30, 2013), considered the same issue and used the

same analysis as that suggested by the Plaintiff in this case in denying a

Motion to dismiss:

> Defendant is correct that ordinarily HUD regulations govern the
> relationship between the mortgagee (i.e., defendant) and the
> government, and not the relationship between the mortgagee and the
> mortgagor. See Neal, 398 Md. at 719-20. Additionally, a number of
> courts have held that there is no private cause of action for violation
> of HUD regulations. See, e.g., id. at 705 (citing authority rejecting
> argument that violation of HUD regulations creates a private cause of
> action). An exception has been recognized, however, where the HUD

14

regulations are incorporated into the contract between mortgagee and mortgagor. See Lindsey v. JPMorgan Chase Bank Nat'l Assoc., 2013 U.S. Dist. LEXIS 83923, 2013 WL 2896897 *14 (N.D. Tex. June 13, 2013) ("Although the . . . HUD [*13] regulations do not provide mortgagors with a private remedy, a violation of HUD regulations may create a private cause of action if the regulations are explicitly incorporated into [an] agreement.") (internal quotations omitted); see also Bagley v. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 11880, 2013 WL 350527, **4-5 (E.D. Va. Jan. 29, 2013); In re Shelton, 481 B.R. 22 (Bankr. W.D. Mo. 2012); Motten v. Chase Home Fin., 831 F. Supp. 2d 988, 1005 (S.D. Tex. 2011). These courts distinguish the plaintiff's cause of action, based on breach of contract, from a suit to enforce HUD regulations "'under some vague and likely non-existent cause of action allowing a member of the public to take upon himself the role of regulatory enforcer.'" Shelton, 481 B.R. at 29 (quoting Mullins v. GMAC Mort., LLC, 2011 U.S. Dist. LEXIS 35210, 2001 WL 1298777, *3 (S.D. W. Va. Mar. 31, 2011). In this circumstance, courts have found that claims for failure to comply with HUD regulations can be brought as breach of contract claims. **3**

Virtually all cases addressing this issue have either found that the mortgagor has a right to assert this defense in a foreclosure proceeding (if in a judicial state) or to seek injunctive relief to stop a foreclosure, if in a non-judicial state. In Rhode Island, exercise of the statutory power of sale cannot commence without a default and acceleration.  This acceleration and foreclosure  is barred by the FHA regulations, until a face to face meeting is offered and rejected by the homeowner after at least one visit to his home by a representative of the lender or its representative.  Since the entire premise of the Motion for Summary Judgment is based on the false assertion that the regulation was complied with, then there remain issues of material fact,

which mitigate against Summary Judgment. This Plaintiff has the right to use the regulations as a shield in a judicial state as a defense to the foreclosure and as a sword in a non-judicial state as a defense to an upcoming foreclosure, whether by asserting a condition precedent or breach of contract theory to support an injunction.

In *Dovenmuhle v. Antonelli*, 790 A.2d 1113 (R.I., 2002**),** the Rhode Island Supreme Court noted in a mortgage context that "Virtually every contract contains an implied covenant of good faith and fair dealing between the parties".  This duty good faith was not complied with by the Defendants, who commenced a foreclosure without the contractual ability to do so and mindful of the existence of the HUD regulation, which was incorporated into the mortgage.

The case of *Martins v Federal National Mortgage Association*, (D.R.I., 2015) establishes that notice provisions in contracts are preconditions to acceleration and foreclosure, which require strict compliance under Rhode Island law:

In Rhode Island, if a contract contains a notice requirement, then a court construes that notice requirement as a condition precedent, which requires strict compliance. *Cinq-Mars v. Travelers Ins. Co.,* 218 A.2d 467, 471 (R.I. 1966) (requirement of written notice for a claim by the insured is a "condition precedent to the insurer's liability."); *Ins. Co. of N. Am. v. Kayser-Roth Corp.,* No. C.A. PC 92-5248, 1999 WL 81366, at *22 (R.I. Super. July 29, 1999) (stating that notice requirements are a condition precedent in

insurance contracts); *Dyer v. Ryder Student Transp. Servs., Inc.,* No. 98-4489, 1999 WL 395417, at *2 (R.I. Super. June 7, 1999) ("If notice by a tenant is not given to a landlord in accordance with the terms of the lease, the right to renew has been lost or has lapsed. . . .").

Furthermore, Paragraph 22 of the Mortgage is a condition precedent, which requires strict compliance, when a mortgagee seeks acceleration and foreclosure. *In re Demers,* 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014) (holding that a notice omitting a borrower's right to go to court to contest acceleration was fatal, and that even if notice to go to court was ambiguously provided, that ambiguity must be construed against the drafter).

Thus applying the *Martins* decision and established Rhode Island law regarding contractual construction, Summary Judgment should be denied as there was no compliance with the terms of the mortgage.

The Plaintiff sought injunctive relief based on two claims. The first was the failure to conduct a face to face meeting, which still has not occurred.  Defendants' attorney prepared a letter directly to Plaintiff, over the objection of Plaintiff's attorney, which was delivered by a litigation support employee of Calibver Home Loan, Inc.  This letter attached to the second motion for Summary Judgment indicated only the following:

We previously tried to reach you to resolve the dispute between you and the Defendant in connection with the loan. The Caliber representative has the authority to discuss any counter-demand that you might make.
Please consult with Attorney Ennis and advise the caliber Representative if you accept this offer or if you have a counter-demand. The Caliber Representative has the authority to discuss any counter-demand that you might make.

However this letter from Caliber's attorney was a  letter only advised the Plaintiff that Caliber wanted to obtain from him his particular offer to resolve the dispute.  The provisions of the HUD regulations are quite specific as to the proper procedure for loss mitigation discussions. 23 C.F.R. 501 provides:

**§ 203.501 Loss mitigation.**
Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department. Such actions include, but are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under §§ 203.471 and 203.614, and recasting of mortgages under § 203.616. HUD may prescribe conditions and requirements for the appropriate use of these loss mitigation actions, concerning such matters as owner-occupancy, extent of previous defaults, prior use of loss mitigation, and evaluation of the mortgagor's income, credit and property.


The purported offer of a face to face meeting merely referenced and undisclosed settlement demand from Caliber and did not discuss the available loss mitigation options to the Plaintiff from the servicer pursuant to the HUD Regulations.  For example a partial claim allows for 30% of the unpaid principal balance to be made a second mortgage with the balance of the loan amortized for thirty years at approximately 4%.  Now mention was made of any options available from either Caliber or the investor on the loan.  These are matters which must be discussed with the homeowner

before a default notice is issued. Thus there remain genuine issues of material fact which are in dispute precluding Summary Judgment as a matter of law. Thus injunctive relief is still available due to the failure of the Defendants to comply.  The Plaintiff will be irreparably harmed if a foreclosure sale proceeds without compliance with the terms of the mortgage.  Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed. The failure of the Defendants to comply with the regulations and to have provided all loss mitigation options available in an actual  face to face meeting with the Plaintiffs and the mortgage or servicer renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale.  The Defendants lack the contractual or statutory ability to foreclose, without the face to face meeting having occurred or having been rejected by the Plaintiff.   This demonstrates that the Plaintiffs have a substantial likelihood of success.  Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants. Such relief will not disserve the public interest if imposed. This property is Plaintiff's home, where he resides with

his children. The relief sought in the complaint was proper given the failure

to comply with the terms of the mortgage.

### THE PLAINTIFF IS ENTITLED TO DISCOVERY REGARDING THE ASSERTIONS MADE BY THE DEFENDANTS REGARDING THE CHAIN OF TITLE AND OWNERSHIP OF THE MORTGAGE

The Plaintiff has obtained on April 5, 2017, a loan level data search

from an expert witness, Bernard Jay Patterson, who reviewed the records of

the Government National Mortgage Association database and determined

that the mortgage loan was transferred from the originator to Chase, then to

a Ginnie Mae pool number 004423 in April 2009,   then back to Chase from

the Ginnie Mae pool in February 2013.  The records of Chase provided to

the Plaintiff by Caliber in August 2016 also establish that the loan had been

removed from a Ginnie Mae pool on March 1, 2013(Exhibit 2).  This travel

of the mortgage loan is not  consistent with the alleged copy of the note,

which Plaintiff provided. This note contained one alleged allonge,

purporting to endorse the note first from the originator to JPMorgan Chase

Bank, N.A. and then from Chase to the Secretary of HUD.  However there

was no endorsement to the Ginnie Mae Pool number 004423 or U.S. Bank as

Trustee.  In addition the note software printed the note in a program entitled

Docmagic, with the software program dated May 1, 2008. The so-called

20

allonge used the same software, but with a date of May 3, 2006. The absence

of any endorsement to the Defendant Trust and the failure to endorse the

note in blank to the Ginnie Mae, raises questions which require discovery on

the part of the Plaintiff to resolve these issues and to properly address those

issues on Summary Judgment pursuant to FRCP 56(d). This Rule provides:

 If a nonmovant shows by affidavit or declaration that, for specified reasons,
it cannot present facts essential to justify its opposition, the court may:

    (1) defer considering the motion or deny it;

    (2) allow time to obtain affidavits or declarations or to take discovery;
 or

    (3) issue any other appropriate order.

Plaintiff has disputed the allegations regarding the face to face meeting,

which is the main  basis for the Motion for Summary Judgment. However

the issue of the ownership of the note and mortgage is a matter as to which

the Plaintiff should have the opportunity for discovery, given the

deficiencies in the note, which suggest that it is not a true copy. In addition,

the Plaintiff alleged in the complaint in paragraph 7:

    7.    The alleged assignment was void, because prior to January 9,
2015 the Plaintiff's mortgage loan had been sold with a pool of loans by the
Department of Housing and Urban Development in December 2014 to  Lone
Star Funding.

    However in its Motion, the Defendants did not address this allegation

about the sale of loans from HUD to Lone Star Funding.  The purported

assignment was purportedly from HUD to the Defendant Trust, with Caliber

as the power of attorney. However the Motion for Summary Judgment only

contained a limited power of attorney ("Exhibit A") from the purported

grantee, US Bank to Caliber, not from HUD. Thus this raises questions of

material fact which when combined with the failure to provide a note

endorsed to the defendant trust suggests that Plaintiff should be

entitled to discovery in regard to this issue of ownership of the mortgage and

note. FRCP 56(d) allows this Court to

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery;

In view of the contested issues of genuine material fact, this Court is

respectfully requested to allow the Plaintiff an opportunity to conduct

discovery regarding the owner of the note and to rule solely on the issue of

the face to face meeting.  The affidavit of the Plaintiff has established that

the Defendants' Motion for Summary Judgment should be denied because

the Plaintiff has demonstrated noncompliance with the regulations and as a

result, there exist genuine issues of material fact as to whether the

Defendants complied with paragraph 9 of the mortgage and the HUD

regulations before commencing to seek to foreclose. Since there was no face

to face meeting which included all aspects of loss mitigation, there was

neither a default notice nor acceleration sent after a face to face meeting was

held or scheduled by Chase and rejected by the Plaintiff after at least one

letter and a visit to his home. His affidavit indicates the contrary, namely there was no visit to his home by Chase , Caliber or a representative. The subsequent visit to drop off a settlement discussion letter should not be considered as a face to face4 meeting attempt as determined by the Federal Regulations.

The Plaintiff should be allowed to file an Amended Complaint, which more particularly references the improper conduct of the Defendants, in charging legal fees for an improper exercise of the statutory power of sale. Plaintiff is prepared to file a Motion to File an Amended Complaint alleging violations of the Truth in Lending Act against US Bank for failure to send accurate periodic monthly statements, for violations of the Fair Debt Collection Practices Act against Caliber for falsely stating the amount of the Debt in the past twelve periodic monthly statements.  Both of these claims arise from sending the Plaintiff bills, which included legal fees and expenses in excess of $4000.00 on each statement since December, 2016.For these reasons the Motion for Summary Judgment should be denied.

Respectfully submitted,

December 20, 2017                    /s/ John B. Ennis
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, Rhode Island 02920
                                    (401) 943-9230
                                    Jbelaw75@gmail.com


CERTIFICATION

I hereby certify that I emailed a copy of the above Memorandum of

Law to the following electronically on this 20t$^h$ day of December, 2017:


Joseph Scully, Esq.
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103-3499


                                    /s/ John B. Ennis